664 So.2d 821 (1995)
STATE of Louisiana
v.
Derrick Dewayne DAVIS, Defendant-Appellant.
No. 95-801.
Court of Appeal of Louisiana, Third Circuit.
December 6, 1995.
*822 Charles F. Wagner, District Attorney, T. Gerald Henderson, Alexandria, for State.
Joseph Richard Kutch, Pineville, for Derrick Dewayne Davis.
Before DOUCET, C.J., and COOKS and PETERS, JJ.
DOUCET, Chief Judge.
Defendant, Derrick DeWayne Davis, was charged by Bill of Indictment filed on September 22, 1994, with one count of molestation of a juvenile in violation of La.R.S. 14:81.2. Defendant pled not guilty to the charge on September 30, 1994. After a trial by jury held on December 13th and 14th, 1994, defendant was found guilty as charged. Defendant filed a Motion for Post-Verdict Judgment of Acquittal, which was heard on February 6, 1995. After denying defendant's motion, the trial judge sentenced defendant to six (6) years at hard labor. The trial judge also required defendant to pay court costs and recommended that defendant be admitted to the Blue Waters Program for substance abuse. Defendant orally moved for reconsideration of his sentence; said motion was denied. Defendant appeals his conviction and sentence, alleging four (4) assignments of error.

FACTS:
Sometime in the middle of July 1994, the victim, I.A., age five (5), was caught engaging in simulated sexual intercourse with another child. When asked by her mother where she learned such behavior, I.A. answered her step-brother, Mario. I.A.'s mother stated Mario is "[a]bout six or seven" years old. Disbelieving I.A. learned such behavior from Mario, I.A.'s mother and aunt asked her again where she learned such behavior, and I.A. named the defendant, age twenty-six (26). The defendant was the boyfriend of the victim's mother, Lena A. The defendant and Ms. A. had dated off and on for four (4) to five (5) years, at the time of the alleged occurrence, the defendant lived with Ms. A. Although the defendant was not the victim's biological father, the victim referred to him as "daddy."

ERRORS PATENT:
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
*823 In accordance with this article, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.[1]

ASSIGNMENT OF ERROR NO. 1:
By this assignment, defendant claims the evidence introduced was insufficient for a rational jury to find defendant guilty beyond a reasonable doubt.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses and, therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559, at 563, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Molestation of a juvenile, the crime for which defendant was convicted, is defined as follows:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
La.R.S. 14:81.2(A).
Defendant does not contest the sufficiency of the evidence as to the elements of molestation of a juvenile. Rather, defendant attacks the credibility of the victim's testimony. In his brief, defendant sets forth the issue as follows: "The issue is whether a rational trier of fact ... could conclude that a child of this age was sufficiently believable under the totality of the circumstances to form the basis of a conviction." Defendant further argues the victim initially stated Mario, her stepbrother, taught her the inappropriate behavior she was acting out with her cousin. Defendant claims the victim was "pressured and threatened" by her mother and aunt into naming the defendant as the one who taught her such behavior.
It is unclear whether the defendant is specifically challenging the competency of the victim to testify. During the trial, no objection to the victim's competency was made by the defendant. At the hearing on defendant's motion for post verdict judgment of acquittal, defendant argued the victim's testimony was not credible but did not claim she was incompetent to testify. Thus, if defendant is claiming the victim was not competent to testify, he has waived this argument by failing to contemporaneously object at trial. See State v. Bruce, 577 So.2d 209 (La.App. 1 Cir.1991), writ denied, 580 So.2d 667 (La.1991); cert. denied, 502 U.S. 1003, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991).
Furthermore, even if defendant had objected to the victim's competency, a finding of competency by the trial court would not have been an abuse of discretion. In the instant case, the victim was questioned by the prosecutor about her ability to tell the difference between the truth and a lie. The *824 victim indicated that she understood the difference between telling the truth and lying, that she knew she would get in trouble if she lied, and that she must tell the truth in court. In State v. Racca, 525 So.2d 1229 (La.App. 1 Cir.1988) at 1232, the court gave the following reasons for finding that the trial court did not err by finding a six year old victim competent to testify:
During the hearing to determine her competency, the victim testified that she knew what it means to tell the truth and that she knew what a lie is. She further testified that she knew it was bad to tell a lie and that it was good to tell the truth. She stated that she would tell the truth in her testimony.
Thus, even if defendant had objected to the competency of the victim to testify in the instant case, a finding that she was competent would not have been an abuse of discretion.
In his brief, defendant claims the victim's testimony was not credible since she first named Mario, her stepbrother, as the person who taught her the inappropriate behavior she was engaged in with her cousin, and she named the defendant only after she was pressured into doing so by her mother and aunt. The victim was questioned on cross-examination about the fact that she first named Mario and the fact that the victim named the defendant only after her aunt questioned her several times. The defense also questioned Ms. A. about the fact that the victim first named Mario and also that the victim said Mario told her not to say anything. It is the role of the fact finder to weigh the respective credibility of the witnesses. See State ex rel. Graffagnino, 436 So.2d at 563. Absent compelling circumstances, we will not disturb a trial court's ruling.
Although not specifically argued in this assignment, defendant also claims, in his conclusion, that the victim's testimony was not credible since the "statements made by the child during simulated intercourse are inconsistent with the defendant's mannerisms during sexual intercourse ..." At trial, Ms. A. testified that her sister stated she heard the victim saying, "Oh, baby, oh baby," or "Kiss me baby," during the inappropriate behavior in which she was caught engaging with her cousin. As with defendant's previous attack on the victim's credibility, the defendant was able to introduce testimony at trial showing these statements were inconsistent with the defendant's mannerisms during intercourse. Ms. A. testified that the defendant did not have the habit of saying such things during intercourse. Ms. Sophia Robinson, who once lived with the defendant, testified that the defendant never said such things during intercourse with her. However, as stated earlier, it is the role of the fact finder to weigh the respective credibility of witnesses. See State ex rel. Graffagnino, 436 So.2d at 563.
In State v. Pontiff, 604 So.2d 71, 76 (La.App. 3 Cir.1992), this court stated the following with regard to a jury's credibility determination:
The jury, sitting as the trier of fact, had the distinct opportunity to view each individual witness' demeanor, listen to their respective testimony, and assess credibility. Their firsthand knowledge of the witness' testimony is an immeasurable advantage when compared to our limited review within the four corners of the cold record... Since the record fully supports the jury findings, this court will not engage in reevaluating the credibility of witnesses and reweighing the other evidence adduced at trial.
As in Pontiff, we find the record in the case sub judice fully supports the jury's verdict and we will not disturb its credibility determinations. To begin with, Lena A., the victim's mother, testified that the defendant, who was her boyfriend, lived with her. She stated he was twenty-six (26) years old, and was referred to as daddy by the victim even though he was not the victim's biological father. As for the incident itself, the victim testified that the defendant took her to her mama's house where they were alone. The victim then stated the defendant took off his and her pants. The victim further testified that the defendant put blue grease on her middle and then put his hand inside her. The state introduced blue hair grease as State's Exhibit 1. The victim identified the *825 exhibit as the blue grease the defendant put on her middle. Detective Gary Billingsly identified the blue hair grease introduced at trial was the same blue grease he retrieved from the apartment of Ms. A., the mother of the victim. Finally, the victim testified the defendant told her to keep her mouth closed or he would not let her go outside or get in her pool.
In support of the victim's testimony, the prosecution also questioned Dr. David Spence, the obstetrician/gynecologist who examined the victim on July 19, 1994. According to Dr. Spence, the victim told him she had been "touched and the `middle' of this individual had been placed in her `middle'." Dr. Spence testified that although there were not any signs of acute trauma, or trauma within the last twenty-four (24) to forty-eight (48) hours, to the victim's vagina, there was some type of trauma to the victim's hymen. The Bill of Indictment charges defendant with molestation of a juvenile on or about July 13th and Dr. Spence examined the victim six (6) days later on July 19th. The doctor testified that the hymen of a five year old is measured in millimeters. He stated his examination revealed the victim's vaginal orifice measured over ten times normal, indicating "that some type of trauma had obliterated the hymen and dilated the vaginal introitus." Dr. Spence further stated that his findings could have been caused by blunt trauma, digital penetration, foreign bodies, or penal insertion. Finally, Dr. Spencer testified that the victim's injuries were consistent with the history he received from her.
We find the foregoing testimony supports a finding by the jury that defendant was guilty of molestation of a juvenile. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2:
Defendant numbered two of his assigned errors with the number two (2). In one of the assignments, defendant argues the sentence he received was excessive. Defendant did not argue the excessiveness of his sentence in his brief. Therefore, we find that assignment abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
In the remaining Assignment of Error No. 2, defendant claims the trial court erred in not permitting the defense to question witnesses concerning prior, inappropriate sexual acting out by the alleged victim. In his brief, defendant claims a motion was filed and a hearing held as required by La. Code Evid. art. 412. That article provides in pertinent part:
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
C. Motion. (1) Before the person accused of committing a crime that involves sexually assaultive behavior may offer under Paragraph B of this Article evidence of specific instances of the victim's past sexual behavior, the accused shall make a written motion in camera to offer such evidence. The motion shall be accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses.
(2) The motion and statement of evidence shall be served on the state which shall make a reasonable effort to notify the victim prior to the hearing.
Defendant filed a "Motion for In Camera Hearing" on November 23, 1994. In that motion, defendant alleged the following:
Mover shows that the alleged victim has named another individual or individuals as having molested her before naming the *826 defendant. Mover shows that the individual(s) named were named as being involved with the specific act or acts of which the defendant now stands accused. Mover further shows that the alleged victim suffered certain injuries during the incident(s).
* * * * * *
In addition, certain statements were attributed to Derrick Williams admitting that I.A. had initially and repeatedly mentioned another individual as the molester but counsel for the defendant has been unable to ascertain the address of Darlene Michelle Gobel, who may be with the United States Army in Haiti, or her son, Derrick Williams, who are believed to be domiciled in New York State.
Defendant also listed the persons he intended to call as witnesses. There is no record of any other written motion for an in camera hearing filed by defendant. We find the above motion does not state that defendant sought to introduce prior, inappropriate sexual acting out by the victim. The motion states only that the defendant sought introduction of statements made by the victim naming another individual as having molested her and statements by Derrick Williams that the victim initially named another individual as having molested her. Thus, we find defendant did not comply with the requirements in La.Code Evid. art. 412(C).
There are two instances in which article 412 allows the introduction of past sexual conduct. One such instance is when the evidence is being introduced to show the accused was not the source of semen or injury. In that instance such evidence is limited to a period of not more than seventy-two hours before the time of the offense. At the hearing on defendant's in camera motion, defendant raised the past sexual conduct issue even though that issue was not raised in his written motion. At the hearing, the defendant admitted that the conduct he sought to introduce was beyond the seventy-two hour limit: "It's definitely beyond seventy-two hours. The information I got was well beyond that limit."
The second instance provided for in article 412 is when the evidence of past sexual behavior involves conduct with the accused offered to show the victim consented to the sexually assaultive behavior. Defendant does not argue that the victim consented to the defendant's molestation of her. Even had he made such an argument, it would have been of no consequence since the victim was too young to consent to any sexual conduct. Thus such evidence would not be admissible under article 412.
Defendant argued at the hearing that since the past sexual behavior he sought to introduce was not actual intercourse, article 412 did not apply. Article 412(F) defines past sexual behavior as "sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged." We have not found, and defendant does not cite, any cases which limit this definition to intercourse. This argument also lacks merit.
Finally, we note defendant's implication in his brief that article 412 does not apply to the situation present in this case. Defendant states:
The rape shield concept is intended to protect the victim from improper character attacks by the accused. (Citation omitted). The situation here is different from that in State v. Feet, 481 So.2d 667 (La. App. 1 Cir.1985) where any prior sexual activity between the seven year old victim and another person had no bearing on the charge against the defendant. Here, the jury was given testimony which tended to show that the inappropriate sexual acting out was directly related to the alleged actions by the defendant shortly beforehand but were not permitted to hear that the same conduct by the child occurred previously.
The victim in the case sub judice was only five (5) years old. In his brief, the defendant states the purpose for the introduction of the prior sexual behavior as follows: "At trial, this type of conduct was described as having occurred almost immediately after the defendant had been with the child but we were precluded from showing, through the mother and not the child, the [sic] such conduct had occurred before." Although not specifically stated by defendant, we assume the purpose of this evidence would not have been to attack the character of the victim, but rather to *827 show that the victim may have learned the inappropriate behavior from someone other than the defendant. The only testimony identifying the defendant as the perpetrator was the victim's. Evidence that the victim engaged in inappropriate sexual behavior before the alleged incident would be relevant to show whether defendant was the person who molested the victim.
However, defendant does not state exactly when this alleged previous sexual conduct occurred. Thus, we cannot ascertain if the alleged previous sexual conduct occurred before the alleged act of molestation by the defendant. Furthermore, defendant stated at the in camera hearing that the prior sexual conduct was well beyond the seventy-two (72) hour limit in article 412. That statement leads one to the inescapable conclusion that the conduct occurred more than 72 hours prior to the alleged molestation, even though defendant could supply no specific dates. Thus, even if the conduct occurred, testimony thereof would not be admissible under La. Code Evid. art. 412(B)(1).
Furthermore, in State v. Billings, 93-1542 (La.App. 3 Cir. 5/4/94); 640 So.2d 500, writ denied, 94-1437 (La. 10/7/94); 644 So.2d 631, this court applied the rape shield law to a case where the defendant wanted to introduce medical records "to establish that the young victim already had inappropriate knowledge of certain sexual activities in March of 1988, and that this knowledge and the alleged sexual abuse was possibly a result of the victim's biological father or uncle molesting her, and not the defendant." Id. at 502. The court in Billings noted the motion was untimely under the provisions of article 412, but, nevertheless, discussed the substance of the assignment stating:
... Even if the defendant had timely filed his motion pursuant to article 412 of the Louisiana Code of Evidence, the trial court could have denied this motion on the merits finding that the timing of the victim's hospitalization and the timing of the defendant becoming a member of her family raised the probability that it was the defendant who committed these crimes upon the victim ...
Id. at 502.
Thus, this court has applied the rape shield law to a situation in which a young victim was involved and the evidence was not being introduced to attack the character of the victim.
In Billings, Id., this court cited State v. Blue, 591 So.2d 1173 (La.App. 1 Cir.1991), remanded on other grounds, 591 So.2d 1172 (La.1992), and discussed it as follows:
Even though the defendant specifically noted that he was not introducing the evidence to impeach the victim's general reputation for chastity, but only to explain that someone other than the defendant had molested her in the past and therefore the young victim was able to describe the act of molestation from the previous act of molestation, the first circuit ruled that it was correct that the alleged prior acts of molestation of the victim were irrelevant and inadmissible in the present case.
The Billings court did not comment on the argument made by the defendant in Blue that he was not introducing the evidence to impeach the victim's general reputation for chastity. However, the court in Billings did apply article 412 to its case.
We find no reason to deviate from our, or our brethren of the first circuit's, prior holdings. For the foregoing reasons, we also find this assignment without merit.

ASSIGNMENT OF ERROR NO. 4 (BRIEF ASSIGNMENT NO. 3):
In this assignment, defendant argues the court erred in not granting a mistrial when timely requested. Defendant does not specify at what time during trial a mistrial should have been granted. Because of his argument in his briefed assignment number three (3), we assume defendant is referring to the mistrial requested after Lena A., the victim's mother, testified that the victim at first said the defendant put his middle in her middle, but then stated he just touched her. Defendant objected to the testimony and moved for a mistrial, claiming that the testimony was an improper reference to another crime, namely aggravated rape. The trial judge overruled the objection and denied the motion for a mistrial.
In the present instance, we find the reference made by Ms. A. was not a reference *828 to other crimes evidence. Molestation of a juvenile is defined in pertinent part as "the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen ..." La.R.S. 14:81.2(A). Lewd is defined by Black's Law Dictionary as "Obscene, lustful, indecent, lascivious, lecherous." Lascivious is defined in Black's as "Tending to excite lust; lewd; indecent; obscene; sexual impurity; tending to deprave the morals in respect to sexual relations; licentious." These definitions would include the act of touching the victim's vaginal area as well as intercourse. Thus, we conclude Ms. A.'s statement that the victim first stated the defendant "put his middle in her middle" was not a reference to another crime, but was a reference to the crime of molestation of a juvenile.
Further, this evidence does not unduly prejudice the defendant. Ms. A.'s admission that the victim changed her story as to what actually happened helps the defendant discredit the victim's testimony.
Furthermore, even if the reference was a reference to other crimes evidence, the alleged other crime was an integral part of the molestation. See State v. Dixon, 628 So.2d 1295 (La.App. 3 Cir.1993). According to La.Code Evid. art. 404(B), the evidence would be admissible other crimes evidence. Defendant claims no Prieur notice was given. However, none is necessary when the other crimes evidence constitutes an integral part of the act or transaction for which the defendant is being tried. La.Code Evid. art. 404(B); State v. Prieur, 277 So.2d 126 (La.1973); State v. Goza, 408 So.2d 1349 (La.1982); State v. Broussard, 95-792 (La. App. 3 Cir. 12/6/95), 664 So.2d 835.
For the foregoing reasons, this assignment, likewise, lacks merit.
Accordingly, for the reasons stated above, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Although no time was ordered in default of payment of the costs as required by La.Code Crim.P. art. 884, the defendant was indigent and thus imposition of default time would have resulted in an unconstitutional sentence. Since constitutional principles override statutory law, defendant's sentence is legal. State v. Dickerson, 579 So.2d 472, 483 (La.App. 3 Cir.1991), modified on other grounds, 584 So.2d 1140 (La.1991).