783 So.2d 532 (2001)
STATE of Louisiana
v.
John M. KINSEL.
No. 00-KA-1610.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2001.
*533 Paul D. Connick, Jr., District Attorney, for Plaintiff-Appellee Rebecca J. Becker, Assistant D.A., Terry Boudreaux, Assistant D.A., Donald A. Rowan, Jr., Assistant D.A., Gregory Kennedy, Assistant D.A.
James A. Williams, Gretna, LA, for Defendant-Appellant Kevin V. Boshea, Davidson S. Ehle, III, Michelle H. Hesni.
Panel composed of Judges DUFRESNE, CANNELLA and McMANUS.
DUFRESNE, Chief Judge.
The Jefferson Parish Grand Jury returned an indictment charging defendant, John Kinsel, with a violation of LSA-R.S. 14:42, in that he did commit aggravated rape of A.M., a person under the age of twelve years, from November 1992 through October 1995. The matter initially proceeded to trial in February of 1998; however, pursuant to a defense motion, the trial judge declared a mistrial. A new trial was held August 30 through September 1, 1999. After considering the evidence presented, the jury found defendant guilty as charged. Following the denial of his motion for new trial, the judge sentenced defendant to the mandatory term of life imprisonment at hard labor without *534 benefit of parole, probation, or suspension. Defendant now appeals.

FACTS
The victim, A.M., was twelve years old at the time of trial. She testified that, from the time that she was six years old until she was nine years old, the defendant, her mother's boyfriend, raped her both anally and vaginally, on numerous occasions. The sexual abuse first began in Monroe, Louisiana, and continued when her family moved to various residences in Jefferson Parish. The specific details of these offenses will be discussed in Assignment of Error Number Two, relating to the sufficiency of the evidence.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assigned error, defendant argues that the trial court erred in allowing evidence of other crimes.
At trial, the victim testified that when she was six years old, she, her mother, and her siblings all resided at her grandmother's home near Monroe, Louisiana. At the time, defendant was living with them also. A.M. stated that one day, after playing outside, she came indoors to use the restroom, whereupon she accidently walked in on defendant "sitting on the toilet." A.M. insisted that she would use the other bathroom, but defendant told her instead to "come in." Defendant instructed A.M. to remove her pants, and subsequently raped her anally. Defendant told her not to tell anyone. On another occasion at the Monroe residence, A.M. stated that defendant told her other siblings to take a nap. Defendant then took A.M. into the bedroom, raped her anally, and forced her to perform oral sex on him.
Defendant now complains that the trial court erred in admitting evidence of the Monroe sexual abuse because the state failed to comply with the procedural requirements of written notice and a pretrial hearing required by State v. Prieur, 277 So.2d 126 (La.1973) and LSA-C.E. art. 404B.
LSA-C.E. art. 404B(1) states:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
A review of the record shows that defendant asked the state during discovery in this matter about its intent to introduce similar "bad acts" of defendant in order to prove "system, knowledge, and intent." The state replied that it had no Prieur evidence. The record does not reflect that the state amended its discovery response relative to this issue prior to trial. The record further shows that the state did not file a notice of intent to use other crimes evidence pursuant to LSA-C.E. art. 404B. In addition, the trial court did not conduct a pre-trial hearing on the admissibility of other crimes evidence.
However, not every violation of pre-trial procedures, including Prieur violations, requires reversal. Before a defendant can complain of such a violation, he must show prejudice. State v. Pardon, 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d *535 50, writ denied, 97-2892 (La.3/20/98), 715 So.2d 1207.
In the present case, we find that defendant failed to prove that he was prejudiced by these procedural violations.[1] Although the state did not provide defendant with formal notice, defendant was well aware of the evidence against him, including the Monroe allegations of sexual abuse. The record reflects that defendant was familiar with the videotaped interview that the victim gave at the Children's Advocacy Center, in which she first described the sexual abuse which occurred in Monroe as well as various locations in Jefferson Parish. Defense counsel also had notice of this information from defendant's first trial which ended in a mistrial. Despite the fact that the state did not comply with the procedural requirements of State v. Prieur and LSA-C.E. art. 404, we find that the trial court did not err in allowing the other crimes evidence. See State v. Acliese, 403 So.2d 665 (La.1981), where the Louisiana Supreme Court held that evidence of prior rapes or attempted rapes by defendant of the victim was properly admitted. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In this second assigned error, defendant challenges the sufficiency of the evidence used to convict him of aggravated rape. He points to conflicting evidence presented at trial as well as the lack of corroborating evidence to support the victim's allegations.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In the present case, defendant was charged with aggravated rape. That offense is defined in LSA-R.S. 14:42, which provides, in pertinent part, as follows:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * *
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
At trial, the victim, A.M., testified that defendant's sexual abuse of her began when she was six years old in Monroe, Louisiana. From Monroe, A.M. and her family moved to a home on Mason Street in Gretna, Louisiana. A.M. testified that while her mother was at work during the day, defendant, who resided with them at the time, would take her into his room and sodomize her. A.M. estimated that this occurred five or six times while she lived at the Mason Street residence.
A.M. and her family moved from Mason Street to her grandfather's residence on Sheree Lyn Court in Gretna, Louisiana. *536 A.M. testified that at the residence on Sheree Lyn, defendant would wake her up in the morning and bring her to the bathroom, where he would penetrate her anally. At this address, defendant also made vaginal penetration. A.M. estimated that defendant raped her approximately ten times while she resided with her grandfather.
Finally, A.M. and her family moved into a residence on Hunterbrook Street. On one afternoon, A.M. testified that defendant had become upset with her about something she had told her friends about defendant. She and defendant were alone in the house, and defendant began to choke her, saying, "Don't tell anyone that I've ever done this, or I'll kill you, and then I'll kill your whole family." The defendant then raped her vaginally and forced her to perform oral sex upon him.
Eventually, A.M. told her mother that defendant had "touched [her] in a way she didn't like." Apparently, A.M.'s mother had no response to the allegations at that time. A.M. then told a school counselor about the abuse, indicating that she wanted the police to be contacted, but not her parents.
Dr. Scott Benton, an expert in pediatric forensic examinations, testified that he examined the victim, A.M., on October 9, 1996. As a result of the medical exam, Dr. Benton concluded that A.M. had "abnormalities" in the area around the hymen which were consistent with, but not 100 percent indicative of, sexual abuse or blunt trauma. Dr. Benton also concluded that the findings would not have been the result of some type of accidental trauma. In regard to the anal penetration made upon A.M., Dr. Benton testified that he found no scarring in that area, concluding that scarring after such a trauma would be a very rare event.
In rebutting the testimony of the victim, defendant relies on the testimony of the victim's mother. Specifically, defendant points to Ms. M.'s testimony that defendant did not reside with her family from November 1993 to May 1994, the period of time when the family lived at Sheree Lyn Court in Gretna, Louisiana. In his brief, defendant asserts that Ms. M.'s testimony in this regard "factually contradicts" A.M.'s assertion the defendant raped her on approximately ten occasions while she resided at that address. Defendant also draws the court's attention to the testimony of Ms. M., where she stated that she suspected her daughter was lying about the accusation, because one of A.M.'s friends had recently made a false claim of being raped. Finally, Ms. M. testified that she disbelieved her daughter's claim because A.M.'s description of defendant's "physical make-up" was not consistent with what she knew to be true.
The jury was also presented with the testimony of G.E., a defense witness, who stated that she was friends with the victim. The relevant portion of her testimony was as follows:
DEFENSE COUNSEL:
I want you to tell us about your conversation with [A.M.]
WITNESS:
One day I was over there and I was just talking to her and nobody wasn't around and I never had a problem with John, so I was just wondering why she would say something like that [regarding the rape allegation]. And I asked her ... I said [A.M.], "why did you ever say that to [sic] Johnsay all that stuff about John?" And she said, "Because whenever he met my mom, I didn't think my mom was happy so I said all that stuff `cause I never liked him ..." So, she had to get rid of him, that's what she [A.M.] told me.
*537 Upon cross-examination, however, G.E. testified A.M. never denied that the rapes took place, but only told her the reason she reported defendant.
The defendant also testified at trial. He denied performing any sexual acts with A.M. and also denied ever living on Sheree Lyn Court with the family.
Although the defense presented controverting testimony, the jury obviously found the victim's testimony to be credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. The credibility of witnesses will not be reweighed on appeal. State v. Hotoph, 99-243 (La. App. 5 Cir. 11/10/99), 750 So.2d 1036, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 2000-150 (La.6/30/00), 765 So.2d 1066. It has been held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, supra.
Based on the foregoing discussion, we find that the evidence presented at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant committed the offense of aggravated rape. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The issues defendant raises in Assignments of Error Numbers One and Two were raised in his motion for new trial. By this assignment, defendant contends that the trial court erred in denying his new trial motion for the reasons enumerated in those assignments. Having found defendant's first two assigned errors to be without merit, we likewise conclude that the trial judge did not err in denying his motion for new trial based on those grounds. This assigned error is likewise without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In this assigned error, defendant argues that the trial court erred in granting the state's motion in limine prohibiting testimony regarding prior sexual abuse. He specifically contends his constitutional right to present a defense was violated because the trial court refused to allow defendant to introduce evidence that the victim may have been molested by her biological father.
During the cross-examination of the victim's mother, Ms. M., defense counsel asked the identity of A.M.'s biological father. Ms. M. testified that Mark M. was A.M.'s biological father, and that she and Mark had separated when A.M. was four years old. Ms. M. stated that A.M.'s father resided in North Carolina. When counsel for defendant asked Ms. M. if she had ever seen anything that aroused her suspicions about the relationship between Mark and A.M., the state objected as to relevancy. At the bench conference, defense counsel argued that his purpose in asking the question was to show a basis for A.M.'s knowledge of male genitalia and acts of molestation. The state again objected on the grounds of relevance and further objected to the failure of the defense to comply with the notice requirements of LSA-C.E. art. 412. After the objection was raised, defense counsel agreed to proceed to other matters and to recall Ms. M. at a later time if it was later determined *538 by the court that the line of questioning was proper. Defense counsel did not thereafter pursue this line of questioning with the victim.
At the beginning of trial the following day, outside of the jury's presence, the state raised the issue of defense counsel trying to question any witnesses regarding past sexual behavior on the part of the victim and some other person. After argument, the trial court granted the state's motion in limine and precluded defendant from pursuing this line of questioning. We find no error in the trial court's ruling.
LSA-C.E. art. 412 provides that reputation or opinion evidence of the past sexual behavior of a victim is not admissible in a prosecution where the crime involves sexually assaultive behavior. There are exceptions to this rule. LSA-C.E. art 412B(1) states that evidence of past sexual behavior of the victim with persons other than the accused may be admitted upon the issue of whether or not the accused was the source of semen or injury, provided that the evidence is limited to a period not to exceed 72 hours prior to the time of the offense, and further provided that the jury be instructed as to the limited purpose for which the evidence is admitted. There is also a requirement under LSA-C.E. art. 412C and D, that the accused make a written motion in camera to the judge with a written statement setting forth the names and addresses of witnesses within the time of filing for pre-trial motions. The trial judge, however, may allow the filing of the motion at a later date where the motion was not timely due to an impossibility arising through no fault of the accused or where the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence. LSA-C.E. art. 412 D(1) and (2). The trial judge may then hold a closed hearing on the motion to determine the admissibility of the evidence. Any motion, evidence, brief, or record of a hearing of this subject matter is required to be kept in a separate sealed package as part of the record in the case. LSA-C.E. art. 412 E(4).
In this case, the record reflects that the defendant did not follow the requirement under LSA-C.E. art. 412C and D, in making a written motion in camera to the judge with a written statement setting forth the names and addresses of witnesses regarding past sexual behavior of the victim within the time of filing for pre-trial motions. The defendant waited until after jury selection, and even well into trial, before attempting to offer the alleged past sexual behavior evidence. Accordingly, we find that defendant's motion was procedurally untimely, and that the trial court was correct in granting the state's motion in limine. See State v. Billings, 93-1542 (La.App. 3 Cir. 5/4/94), 640 So.2d 500, writ denied, 94-1437 (La.10/7/94), 644 So.2d 631.
Moreover, even if defendant had complied with the procedural requirements of LSA-C.E. art. 412, we find that the evidence was not relevant to the charges at issue and thus, was properly excluded. The victim's biological father and mother separated when the victim was four years old. In addition, A.M.'s biological father lives in North Carolina, and there was no indication that he had access to or contact with A.M. during the period alleged in the indictment. For these reasons, we find that the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment, defendant contends that the trial court erred in failing to require a unanimous verdict for his aggravated rape conviction, which carried *539 a potential capital sentence, although the state did not seek the death penalty in his case.
Defendant was convicted, by a non-unanimous jury,[2] of aggravated rape of a female juvenile under the age of twelve years, a violation of LSA-R.S. 14:42. The time period alleged in the indictment against defendant for the commission of the offenses in question was from "November 1992 through October 1995." Effective August 15, 1995, the Louisiana legislature amended LSAR.S. 14:42, to authorize the death penalty for the offense of which defendant was convicted.
In the present case, the indictment against defendant alleged, and trial testimony established, that defendant would have committed at least some of the acts after the 1995 amendment to LSA-R.S. 14:42 became effective, and thus, the death penalty was applicable. However, the state chose not to seek the death penalty.
The penalty provision for LSA-R.S. 14:42D(2)(b) was amended in the 1997 legislative session to read as follows:
LSA-R.S. 14:42(D)(2)(b) states:
D. (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
(2) However, if the victim was under the age of twelve years, as provided by Paragraph A(4) of this Section:
(b) And if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The provisions of C.Cr.P. Art. 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply.
LSA-C.Cr.P. art. 782 provides in pertinent part:
A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
Although LSA-R.S. 14:42 D(2)(b) was not in effect at the time that defendant committed the alleged offenses, it had been enacted prior to the time of defendant's trial. We find this procedural provision applicable to the instant case. As a result, the provisions of C.Cr.P. art. 782 were properly triggered when the state did not seek the death penalty. Accordingly, we find that the trial court did not err in failing to require a unanimous verdict for defendant's aggravated rape conviction. This assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER SIX
In his final assigned error, defendant argues that since this was a capital offense for procedural purposes, the trial court erred by failing to sequester the jury.
LSA-C.Cr.P. art. 791 provides for sequestration of jurors as follows:

*540 A. A jury is sequestered by being kept together in the charge of an officer of the court so as to be secluded from outside communication, except as permitted by R.S. 18:1307.2.
B. In capital cases, after each juror is sworn he shall be sequestered, unless the state and the defense have jointly moved that the jury not be sequestered.
C. In noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court.
In a noncapital case, the trial judge has discretion to decide whether or not to sequester a jury. The purpose of sequestering jurors is to protect them from outside influence and from basing their verdict upon anything other than the evidence developed at trial. State v. Williams, 445 So.2d 1171 (La.1984).
In the present case, at the beginning of trial, the court advised the jury not to discuss the case amongst themselves or with other persons, including parties, their attorneys or witnesses. Also, at the close of the first day of trial, the court advised the jurors not to read any newspaper articles about the case. In the present case, there was no showing that the jury disregarded these instructions or that defendant was prejudiced by the trial court's failure to sequester this noncapital jury. Likewise, this assigned error in without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reflects that the trial court failed to accurately advise defendant of the prescriptive period for filing post conviction relief as required by LSA-C.Cr.P. art. 930.8C. While the trial court correctly advised defendant that he has two years to file for post conviction relief, he failed to inform him that this period begins to run when his conviction and sentence become final. Accordingly, we remand the matter to the trial court with instructions to accurately inform defendant of this prescriptive period by sending written notice to him within ten days of the rendition of this opinion and to file written proof that defendant received such notice.
For the reasons set forth herein, we affirm defendant's conviction and sentence and remand the matter for further action in accordance with this opinion.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] In addressing whether he was prejudiced by this error, counsel for defendant states in his brief, "while an extensive discussion could follow about the `probative value' versus the `prejudicial effect' of the Monroe evidence, such a discussion can be pretermitted. This is due to the failure of the State to comply with the notice requirements of C.E. art. 404(B)."
[2] The record reflects that the first time the jury was polled, the verdict was nine to three. The second polling of the jury revealed a vote of ten to two. After the second polling, the court declared that the verdict be recorded as a legal verdict. Both pollings are a part of the record.